UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CORNELIUS A. SUTTON,                 )
                                     )
        Petitioner,                  )
                                     )
    vs.                              )          Case No. 4:13-CV-1285 (CEJ)
                                     )
IAN WALLACE,                         )
                                     )
        Respondent.                  )

## MEMORANDUM AND ORDER

This matter is before the Court on the petition of Cornelius A. Sutton for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## I.  Procedural Background

Petitioner is presently incarcerated at the Jefferson City Correctional Center pursuant to the sentence and judgment of the Circuit Court of Cape Girardeau County.  On October 14, 2008, a jury found petitioner guilty of involuntary manslaughter, in violation of Mo. Rev. Stat. § 565.024; robbery in the first degree, in violation of Mo. Rev. Stat. § 569.020; and burglary in the first degree, in violation of Mo. Rev. Stat. § 569.160.  Resp.'s Ex. 6 at 129–31; Resp.'s Ex. 4.  The trial court sentenced petitioner as a prior and persistent offender to consecutive terms of imprisonment of fifteen years, life imprisonment, and thirty years, respectively.  Resp.'s Ex. 6 at 168–71; Resp.'s Ex. 4.  Petitioner appealed his conviction, and on January 26, 2010 the Missouri Court of Appeals affirmed.  State v. Sutton, 302 S.W.3d 743 (Mo. Ct. App. 2010); Resp.'s Ex. 2.

Petitioner filed a timely motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which the post-conviction court denied after holding an

evidentiary hearing. Resp.'s Ex. 5. On April 9, 2013, the Missouri Court of Appeals affirmed the denial of post-conviction relief. <u>Sutton v. State</u>, 395 S.W.3d 85 (Mo. Ct. App. 2013); Resp.'s Ex. 3. On July 8, 2013, petitioner timely filed this petition for relief pursuant to 28 U.S.C. § 2254.

## II. <u>Factual Background</u>

Charles Toler, a retired 70 year-old man, lived on Femmer Lane in Sikeston, Missouri. Mr. Toler was known by his neighbors as a man of routine who woke up around dawn each morning, started his noisy truck, and drove to the local convenience store where he made coffee and helped out around the store. He also was known to carry a thick black leather wallet. On Thursday, August 17, 2006, one of Mr. Toler's neighbors saw petitioner, Milas Walker and Bobby Mays heading toward Mr. Toler's apartment. On Friday, August 18, Mr. Toler's neighbors did not see him leave his house. On Saturday, after Mr. Toler did not show up at the store for the second day in a row, the owner called the sheriff's office to check on Mr. Toler's well-being.

Officer Tracy Shelton knocked on Mr. Toler's front door on the morning of August 19 and received no response. At Mr. Toler's back door, officer Shelton pushed in a piece of plexiglass that was taped to the door, reached in, unlocked the door, and entered the kitchen. As officer Shelton entered the living room, he saw a wallet with its contents scattered and a set of dentures that appeared to have blood on them on the floor. Officer Shelton called other officers for assistance. Upon reentering the house and walking down the hallway leading to the bathroom, the police officers saw Mr. Toler's body lying face down in the bathtub with his wrists and ankles bound with twine.

A pathologist conducted an autopsy on August 20 and estimated that Mr. Toler had been dead for one to three days. The autopsy showed that he had bruising on his chest, fractured ribs, injury to his eye and a broken neck. Based on the autopsy, the coroner marked the cause of death on Mr. Toler's death certificate as asphyxia with secondary flail chest, blunt trauma to the chest. The manner of death was indicated as homicide. At the autopsy, a criminal investigator seized a buccal swab with DNA, a blood sample, and nail clippings from Mr. Toler.

When police officers processed the crime scene at Mr. Toler's house, they discovered a shoe print with a herringbone pattern on the back door. In trash recovered from the dumpster of petitioner's residence, the police found a pair of shoes with the same pattern. Because of the scattered contents of the wallet and a lamp that had been knocked over, investigators concluded that there had been a struggle in the living room. Officers also found blood stains on the carpet, a folding knife on the couch, and a cut telephone line. No money was left in the wallet found on the floor.

Martha Linley lived behind Mr. Toler, with their yards separated by a fence. Ms. Linley's daughter, Latosha Rice, was petitioner's girlfriend. Ms. Linley's other daughter, Cynthia Morrison, was Bobby Mays's girlfriend. When police went to Ms. Linley's house on August 19, petitioner came to the door with Ms. Rice. Petitioner provided police a wrong name, acted agitated and declined to speak to the officers. Petitioner's mother told the police that he acted that way when he was not on his medication. On a warrant to search for evidence related to Mr. Toler's homicide, officers recovered from Ms. Rice's bedroom an employee badge and identification cards that belonged to petitioner. They also found a pair of men's jean shorts that

appeared to have a blood stain on them. Furthermore, they found petitioner's recently cut hair in a white plastic bag on the back steps of Ms. Linley's house. Petitioner previously wore dreadlocks, but shaved his head around the time of Mr. Toler's murder.

Mr. Toler's son informed the police that his father owned a Remington .22 rifle. He gave the officers a receipt with the gun's serial number on it and the owner's manual for the gun. Mr. Toler's rifle was found in the crawl space beneath Ms. Linley's house. The owner of a bait and tackle shop testified that petitioner came into her shop on August 19 and bought a small box of Remington .22 caliber bullets. Petitioner told the police he bought the ammunition for a friend.

When first questioned by the police, petitioner responded that he did not know anyone that lived near Femmer Drive. He later said a friend named Ben and the mother of his child, Ms. Rice, lived nearby. The police interviewed and arrested petitioner on August 22. During the interview, petitioner told the police that he had never seen Mr. Toler before and did not kill him. The police videotaped an interview with petitioner on August 24. During that interview, the police asked petitioner to explain how his DNA was at the crime scene. Petitioner stated that he had been at his girlfriend's house and saw the rear door of Mr. Toler's house open. He went to the house and knocked on the door, but no one answered. He pushed the door open, went inside the house, and found Mr. Toler's body lying on the floor with his hands bound behind his back and blood on his face. He grabbed Mr. Toler by his upper arm, rolled his body over, touched his cheek, and then became scared and fled the house. He went back to his girlfriend's house, changed his clothes, and took a bath. He said he had been afraid to tell the police he had been in the

house, because he was afraid he would be implicated in the crime. He also did not call for help immediately after, because he was afraid the police would consider him a suspect. He told the police he was wearing the blue jean shorts that were later recovered by the police, a white shirt, and a pair of fishing boots when he was in Mr. Toler's house. He said the spare cash he had that weekend was from selling food stamps to his aunt. Petitioner told the police that the rifle in the crawl space at his girlfriend's house was owned by a friend. He repeatedly denied killing Mr. Toler.

The police obtained a buccal swab from petitioner, which was sent to the crime lab for testing with other evidence items. The DNA analyst concluded that the DNA profile developed from the jean shorts found in Ms. Rice's bedroom was consistent with Mr. Toler's DNA profile. The DNA analyst also swabbed the bindings from Mr. Toler's wrists and ankles found a minor component of the DNA sample was consistent with petitioner's DNA profile. The analyst was unable to develop profiles or reach consistency conclusions on any other evidence items submitted.

Additional facts will be included as necessary to address petitioner's claims.

### III.  Legal Standard

When a claim has been adjudicated on the merits in state court proceedings, habeas relief is permissible under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d), only if the state court's determination:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established law if "it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the Supreme Court] but reaches a different result." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005). "The state court need not cite or even be aware of the governing Supreme Court cases, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" <u>Brown v. Luebbers</u>, 371 F.3d 458, 461 (8th Cir. 2004) (<u>citing</u> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002)). "In the 'contrary to' analysis of the state court's decision, [the federal court's] focus is on the result and any reasoning that the court may have given; the absence of reasoning is not a barrier to a denial of relief." <u>Id.</u>

A decision involves an "unreasonable application" of clearly established law if "the state court applies [the Supreme Court's] precedents to the facts in an objectively unreasonable manner," <u>Payton</u>, 125 S. Ct. at 1439; <u>Williams v. Taylor</u>, 529 U.S. 362, 405 (2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u> at 406. "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect." <u>Carter v. Kemna</u>, 255 F.3d 589, 592 (8th Cir. 2001) (<u>quoting</u> <u>Williams</u>, 529 U.S. at 410–11).

**IV.**    **<u>Discussion</u>**

Petitioner presents seventeen grounds for relief in his petition. Petitioner raised and exhausted the following four grounds in the state court proceedings: (1) the trial court erred in excluding witness Bobby Mays's inculpatory statements concerning Mr. Toler's death; (2) the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence and in entering judgment on the jury's guilty verdict on the charge of robbery in the first degree, in that the state presented no evidence proving that physical forced was used for the purpose of taking Mr. Toler's property; (3) the trial court erred in overruling his motion to suppress statements he made to police detectives during custodial interrogations, because he had invoked his right to remain silent and his invocation was not scrupulously honored; and (4) trial counsel was ineffective for failing to remove juror C.D. from the jury, since she slept during the trial. In grounds five and six, petitioner argues that his trial counsel was ineffective for failing to call a list of specified witnesses. Petitioner defaulted on the remaining claims, which will be discussed in more detail below.

### A. Ground One: Exclusion of Bobby Mays's Inculpatory Statements

Petitioner first alleges that the trial court erred in excluding witness Bobby Mays's inculpatory statements concerning Mr. Toler's death. The Missouri Court of Appeals on direct appeal reviewed each of the statements petitioner's counsel submitted in an offer of proof under the Supreme Court's analysis in Chambers v. Mississippi, 410 U.S. 284 (1973). Resp.'s Ex. 2 at 5–7. The state court noted that as a general matter, declarations against the penal interests of an unavailable witness are not admissible in a criminal proceeding. However, the court noted, in Chambers, the Supreme Court recognized a constitutionally-based hearsay

exception that applies to out-of-court statements that both exonerate the accused and are "originally made and subsequently offered at trial under circumstances that provide considerable assurance of their reliability."  410 U.S. at 300.  The state court explained that <u>Chambers</u> set forth a three-pronged reliability test to consider the admissibility of these statements:  "(1) each confession was 'in a very real sense self-incriminatory and unquestionably against interest'; (2) each statement was spontaneously made to a close acquaintance shortly after the [crime] occurred; and (3) the statements were corroborated by other evidence."  <u>State v. Smulls</u>, 935 S.W.2d 9, 20–21 (Mo. banc 1996) (quoting <u>Chambers</u>, 410 U.S. at 300–01).

The state court found that the statements Mays made to Antonio Cooper and Jacob Collins in January or February 2008 failed the second and third prongs of the <u>Chambers</u> test, because petitioner did not demonstrate that either witness was a close acquaintance of Mays or that Mays made the statement "shortly" after Mr. Toler was killed.  With respect to the statement Mays made in August 2008 to Ms. Rice and relatives of both petitioner and Mays, the court found that a statement made almost two years after the crime is not sufficiently close in time to satisfy the third prong of <u>Chambers</u>.  As to the statement Mays made to Linda Patterson in October 2007, the court found this statement, made more than a year after Mr. Toler was killed, also was not sufficiently close in time.  Moreover, the court noted that Mays allegedly told Ms. Patterson that petitioner was involved with the crime.  The court found such a statement that partially inculpates and partially exculpates its speaker is not "unquestionably against interest" to meet the first prong of <u>Chambers</u>.

With respect to statements Mays made to Theres Shannon at a party on August 19, 2006, the state court found that petitioner had not demonstrated that Ms. Shannon was a close acquaintance or that the proposed statement exonerated him. Even if Mays's statement to Ms. Shannon constituted an admission to being involved in the murder of Mr. Toler as opposed to another victim, the court found a jury could still find that petitioner acted as an accomplice in that crime. Finally, the state court considered statements Mays allegedly made to Cedric Hemphill, Terry Polk and Stephanie Jones, asking whether DNA evidence could be obtained from sweat. While Mays asked these questions shortly after Mr. Toler was killed, the state court found that the statements were not necessarily self-incriminatory or unquestionably against Mays's interest. Mays did not link his question about DNA evidence to any particular crime or his role in it.

The Missouri Court of Appeals reasonably applied Chambers in an objectively reasonable manner to the facts before it as reasonably determined in light of the evidence presented at trial. Each of the statements fails to meet at least one of the indicators of reliability set forth in Chambers to support admitting the statement into evidence. The alleged statements Mays made to Mr. Cooper and Mr. Collins that he had "killed one man" and would "kill again" occurred in January or February 2008, sixteen months after Mr. Toler's murder. Resp.'s Ex. 6 at 153. These statements, thus, were not sufficiently close in time. The statements also were not made to close acquaintances, because Mr. Collins told investigators that he and Mays did not get along. Id. Finally, the statements referred to Mays killing an unidentified white man rather than linking Mays to Mr. Toler's death, and thus were not clearly self-incriminating or inculpatory. Resp.'s Ex. 6 at 149.

Similarly, Mays's statements to Ms. Rice that he had killed "that man" and "he deserved it" were made two years after Mr. Toler's death, rather than "shortly after" the crime occurred.  Resp.'s Ex. 6 at 154.  Mays's statements to Ms. Patterson, made fourteen months after Mr. Toler's murder, were not sufficiently self-incriminating, because they blamed Mr. Toler's death on a third person and stated that the crime was "all [petitioner's] idea." Resp.'s Ex. 6 at 147.  Finally, the remaining statements that Mays had choked "a white guy" and the questions related to extracting DNA from sweat were not sufficiently inculpatory and did not exclude petitioner as an accomplice.  Resp.'s Ex. 6 at 141, 156–59.  Accordingly, the decision of the Missouri Court of Appeals to uphold the trial court's decision to exclude the proffered statements from evidence is consistent with a reasonable application of <u>Chambers</u>.  Petitioner, thus, is not entitled to relief on Ground One.

## B.    Ground Two:  Robbery in the First Degree Conviction

Next, petitioner alleges the trial court erred in overruling his motion for judgment of acquittal at the close of all evidence and in entering judgment on the jury's guilty verdict on the charge of robbery in the first degree, because the state presented no evidence proving that physical force was used for the purpose of taking Mr. Toler's property.  The state charged petitioner with robbery in the first degree, asserting that petitioner forcibly stole cash and a .22 caliber rifled owned by Mr. Toler, and in the course thereof caused seriously physical injury to Mr. Toler.  Resp.'s Ex. 6 at 5.  Petitioner's claim implies that the jury had insufficient evidence to find him guilty on the robbery charge.

Section 569.020.1 of the Missouri Revised Statutes provides, *inter alia*, that "[a] person commits the crime of robbery in the first degree when he forcibly steals

property and in the course thereof he, or another participant in the crime, (1) [c]auses serious physical injury to any person."  The elements of state law crimes are defined by state law.  <u>Bounds v. Delo</u>, 151 F.3d 1116, 1118 (8th Cir. 1998). "[A] person 'forcibly steals', and thereby commits robbery, when, in the course of stealing, . . . he uses or threatens the immediate use of physical force upon another person for the purpose of . . . [p]reventing or overcoming resistance to the taking of the property . . . ."  Mo. Rev. Stat. § 569.010(1)(a).  Missouri courts have interpreted "in the course of" in the context of forcible stealing to cover the "whole transaction."  <u>States v. Weems</u>, 840 S.W.2d 222, 228 (Mo. banc 1992).  "So long as the fear or violence precedes or is contemporaneous with the taking, the offense of robbery is complete."  <u>Id.</u>

In reviewing the sufficiency of the evidence to support a guilty verdict, a federal court's task is to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  The Missouri Court of Appeals on direct review found that there was sufficient evidence from which a reasonable jury could find that petitioner used force to overcome Mr. Toler's resistance to the taking of property and that Mr. Toler's physical injury occurred in the course of taking the property. The phone line in Mr. Toler's living room was cut.  The ransacked wallet with its contents strewn across the floor, Mr. Toler's bloody dentures, and blood stains elsewhere in the room provided evidence of a physical confrontation in the living room.  Evidence was also presented at trial that Mr. Toler was tied up while he was alive and struggled against those bindings.  The state court concluded that a jury

could have inferred from this evidence that petitioner entered the house with the intent to steal some of its contents, cut the phone line to prevent Mr. Toler from calling for help, and then attacked and bound Mr. Toler to get his wallet and look for other items in the house.

The decision of the Missouri Court of Appeals is consistent with a reasonable application of <u>Jackson v. Virginia</u>.  <u>See also</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.").  The state court's ruling is also reasonable given the evidence in the record.  At trial, Officer Shelton testified that he saw Mr. Toler's wallet with the contents spread on the living room floor of his apartment, in addition to a set of dentures with blood on them near the wallet.  Other officers testified that the phone line in the living room was cut.  The state also introduced evidence that Mr. Toler had bruising on his chest and internal hemorrhaging to support a conclusion that he received blunt trauma to the chest from a perpetrator.  Moreover, Mr. Toler's son testified that his father owned a .22 caliber rifle that police officers testified was found later in the crawl space underneath one of petitioner's residences.  In light of this evidence, it was reasonable for the court to conclude that there was sufficient evidence to support a first degree robbery conviction.  Accordingly, the decision of the Missouri Court of Appeals is consistent with an objectively reasonable application of clearly established federal law, and petitioner is not entitled to relief on Ground Two.

## C.    Ground Three:  Custodial Interrogations

For his third ground, petitioner argues that the trial court erred in overruling his motion to suppress statements he made to police detectives during custodial interrogations, because he had invoked his right to remain silent and his invocation was not scrupulously honored.  The Missouri Court of Appeals considered this issue on direct appeal.

The Supreme Court in <u>Miranda v. Arizona</u> held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."  384 U.S. 436, 444 (1966).  "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."  <u>Id.</u>  The procedural safeguards required include the following:  "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."  <u>Id.</u>  A defendant's exercise of these rights must be "scrupulously honored."  <u>Id.</u> at 479.

The invocation of the right to remain silent must be made unambiguously. <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 381–82 (2010).  "[W]hen a suspect asserts his right to cut off questioning, the police may 'scrupulously honor' that right by 'immediately ceas[ing] the interrogation, resum[ing] questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restrict[ing] the second interrogation to a crime that had not been a subject of the earlier interrogation.'"  <u>Arizona v. Roberson</u>, 486 U.S. 675, 683 (1988) (quoting

<u>Michigan v. Mosley</u>, 423 U.S. 96, 106 (1975)).  Police fail to honor a decision of a person in custody to cut off questioning if they "refus[e] to discontinue the interrogation upon request or [] persist[] in repeated efforts to wear down his resistance and make him change his mind."  <u>Mosley</u>, 423 U.S. at 105–06.

The Supreme Court has explained that "interrogation," properly understood, involves "either express questioning or its functional equivalent."  <u>Rhode Island v. Innis</u>, 446 U.S. 291, 300–01 (1980).  "That is to say, the term 'interrogation' under <u>Miranda</u> refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  <u>Id.</u> at 301.  "The latter part of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police."  <u>Id.</u> However, the definition extends only "to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response."  <u>Id.</u> at 301–02.  Police "cannot be held accountable for the unforeseeable results of their words or actions."  <u>Id.</u> at 302.

The Missouri Court of Appeals determined that the trial court did not err in failing to suppress statements from either custodial interrogation at issue.  As to the August 23, 2006 interrogation, the state appellate court determined that petitioner had invoked his right to remain silent before police officers were able to inform him why they had requested he come to the station.  After the invocation, detective Caton told petitioner that he did not have to speak with the officers, but informed petitioner that he wanted to explain the reason why he had asked him to come to the station.  The state court opined that this statement merely gave

petitioner an opportunity to say something if he had changed his mind after hearing the reason why the officers sought to question him. The court found it did not constitute a threat or coercion forcing petitioner into making his own statement, or renewed or lengthy questioning or badgering designed to wear petitioner down. Furthermore, the court noted that petitioner, on his own initiative, subsequently took the Miranda form, crossed out the word "refused," and signed his name to indicate he was waiving his right to remain silent. Thus, the court concluded, petitioner's right to remain silent was scrupulously honored.

The decision of the Missouri Court of Appeals with respect to the August 23 interrogation did not involve an unreasonable application of clearly established federal law, nor result in a decision based on an unreasonable determination of the facts in light of the evidence presented. The record indicates that on August 23, deputy Chris Hensley and detective Andy Caton told petitioner there had been some new developments in the case and asked him to accompany them to the police department so they could speak with him about the developments. Resp.'s Ex. 1 at 124–25. The officers transported petitioner to the police department. Resp.'s Ex. 1 at 125–26. At the police department, the officers read petitioner his Miranda rights and presented petitioner with a waiver form. Resp.'s Ex. 1 at 127. Petitioner refused to sign the waiver by writing "refused" on the form, and told the officers he did not want to speak with them. Resp.'s Ex. 1 at 127–29. Detective Caton told petitioner that he did not have to speak with them, but stated that they wanted to explain why they had asked him to come to the police department with them. Resp.'s Ex. 1 at 127–28. The detective told petitioner there had been some new developments in the investigation of Mr. Toler's death. Resp.'s Ex. 1 at 127.

Petitioner then grabbed the <u>Miranda</u> form and signed the waiver. Resp.'s Ex. 1 at 128. At that point, the officers began interviewing petitioner. Resp.'s Ex. 1 at 129. After the interview, the officers place petitioner under arrest.

The state court's decision that detective Caton's statement did not constitute coercion or renewed, lengthy questioning designed to wear defendant down did not involve an unreasonable application of <u>Miranda</u> and its progeny. <u>See</u> <u>United States v. Hull</u>, 419 F.3d 762, 767 (8th Cir. 2005) ("[W]e generally do not find a mere factual statement to be an interrogation where it serves to inform the suspect as to the status of his case or the investigation into his activities."); <u>United States v. Wipf</u>, 397 F.3d 677, 685 (8th Cir. 2005) (holding that an officer's post-invocation statement that he wanted to tell defendant "the situation, and explain the charges against him" does not amount to custodial interrogation); <u>see also</u> <u>United States v. Payne</u>, 954 F.2d 199, 202 (4th Cir. 1992) ("Information about the evidence against a suspect may also contribute to the intelligent exercise of his judgment regarding what course of conduct to follow."). Accordingly, petitioner is not entitled to relief on Ground Three with respect to the statements he made during the August 23 interrogation.

Petitioner argued in the state court that the statements he made during the August 24, 2006 interrogation should have been suppressed because those statements were a result of the initial unlawful interrogation on August 23. Because the appellate court had found the August 23 interrogation was not unlawful, the court concluded that this argument was moot. Moreover, the court wrote that substantial evidence supports the trial court's denial of petitioner's motion to suppress these statements.

The decision of the Missouri Court of Appeals with respect to the August 24 interrogation also involved a reasonable application of clearly established federal law based on a reasonable determination of the facts in the record.  Sergeant Phillip Gregory and deputy Hensley conducted another interview of petitioner at the county jail on August 24, 2006.  Resp.'s Ex. 1 at 147–49.  Sergeant Gregory began the interview by ensuring petitioner understood his rights as set forth in <u>Miranda</u>. Resp.'s Ex. 1 at 150.  At the end of each section of the waiver form that the sergeant went over with him, petitioner initialed and then signed the bottom.  The officers then began interviewing petitioner.

A waiver of a suspect's rights against self-incrimination must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."  <u>Moran v. Burbine</u>, 475 U.S. 412, 421 (1986). This determination "depends 'upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.'"  <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1046 (1983) (quoting <u>North Carolina v. Butler</u>, 441 U.S. 369, 374–75 (1979)).  Nothing in the record indicates that the officers intimidated, coerced, or deceived petitioner into waiving his right to silence on August 24.  As mentioned above, the state court's determination that petitioner changed his mind a short time after invoking his right to remain silent without any impropriety on the part of the officers on August 23 does not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts.  Thus, petitioner is not entitled to relief on the basis of either interrogation cited in Ground Three.

### D. Ground Four:  Juror C.D.

Next, petitioner contends that his trial counsel was ineffective for failing to seek the removal of juror C.D. because she slept during the trial. Petitioner raised this issue in his motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15. Resp.'s Ex. 7 at 10. The motion court held an evidentiary hearing and denied petitioner's motion. Resp.'s Ex. 7 at 4; Resp.'s Ex. 5.

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687 (1984). With respect to the first Strickland prong, there exists a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance. Id. at 689. The reviewing court must refrain "from engaging in hindsight or second-guessing of trial counsel's strategic decisions." Abernathy v. Hobbs, 748 F.3d 813, 816 (8th Cir. 2014) (citation omitted). In order to establish prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Paulson v. Newton Corr. Facility, Warden, 773 F.3d 901, 904 (8th Cir. 2014) (citation omitted) ("Merely showing a conceivable effect is not enough; a reasonable probability is one sufficient to undermine confidence in the outcome.").

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard' of review." Williams v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 563 U.S. 170, 202 (2011)).

First, under Strickland, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the

outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. Strickland, 466 U.S. at 696. . . To satisfy Strickland, the likelihood of a different result must be "substantial, not just conceivable." Id. Under AEDPA, [federal courts] must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect. Harrington v. Richter, [562 U.S.86, 101] (2011). This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102].

Id. at 831-32. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 562 U.S. 86, 105.

The Missouri Court of Appeals, on review of the post-conviction court's ruling, summarized the record as follows. Resp.'s Ex. 3. At trial, the state attempted to remove juror C.D. with a peremptory strike. Defense counsel successfully opposed the removal on Batson grounds. On four occasions during the trial, the state made a record that juror C.D. appeared to be sleeping. After the close of all evidence at trial, the state moved to remove juror C.D. because of her inattention and sleeping during the trial and to replace her with an alternate before the jury began deliberations. Resp.'s Ex. 1 at 1235. Defense counsel objected, stating that he had not observed the juror sleeping and that she appeared to be paying attention as much as the other jurors. Resp.'s Ex. 1 at 1236. The trial court denied the motion.

At the evidentiary hearing on petitioner's post-conviction motion, both of petitioner's trial attorneys, David Kenyon and Robert Steele, testified. Resp.'s Ex. 5. Mr. Kenyon testified that juror C.D. did not seem overly happy about serving on

the jury, but he never saw her sleeping during the trial.  Resp.'s Ex. 5 at 9.  He felt that the state was calling attention to juror C.D. in an effort to remove her from the jury after it had been unsuccessful in removing her with a peremptory strike.   Mr. Kenyon made a tactical decision to argue against her removal, because he believed that C.D. was likely to be a more favorable juror than one of the alternatives who would be used to replace her.  Resp.'s Ex. 5 at 24.   After the trial, Mr. Kenyon learned that C.D. was one of the jurors who held out for a lesser charge of homicide.  Mr. Steele also testified that he believed C.D. was a good juror for the defense and that it was his conscious decision to oppose the state's efforts to have her removed as a juror.  Resp.'s Ex. 5 at 37–38.

The state appellate court found that trial counsel's decision to not remove juror C.D. was a matter of reasonable trial strategy and did not form the basis for a claim of ineffective assistance of counsel.  Resp.'s Ex. 3 at 5.  The appellate court noted that the trial court had learned following the trial that C.D. was very influential in "holding out" for a conviction on a lesser charge, resulting in petitioner's conviction for manslaughter rather than murder in the first degree. Additionally, the state appellate court found that petitioner did not prove prejudice, because the trial court overruled repeated attempts by the state to remove juror C.D. and because he did not show that juror C.D.'s removal and replacement would have created a reasonable probability of a more favorable result.

The decision of the Missouri Court of Appeals involves a reasonable determination of the facts based on the record and a reasonable application of Strickland.   At the post-conviction evidentiary hearing, both of petitioner's trial attorneys testified that they were satisfied with C.D. serving on the jury and they

consciously argued against the state's attempts to remove her. Mr. Kenyon believed juror C.D. would be more favorable to petitioner's position than an alternate juror would. Neither attorney saw juror C.D. sleeping during the trial. Mr. Steele testified that he believed the state was seeking to remove her because of her race. It was not unreasonable for the state court to find that defense counsel's trial strategy was objectively reasonable. As such, petitioner is not entitled to relief on Ground Four.

### E. Grounds Five and Six: Ineffective Assistance of Trial Counsel for Failing to Call Witnesses

In his next two claims, petitioner asserts that his trial counsel was ineffective for failing to investigate or call a list of specified witnesses at trial. As he acknowledges, these claims are procedurally defaulted because he failed to raise them in post-conviction proceedings. He argues, however, that he can establish cause for this default under Martinez v. Ryan, 132 S. Ct. 1309 (U.S. 2012).

In Martinez, the United States Supreme Court held that the ineffective assistance of a petitioner's post-conviction counsel may establish cause for failure properly to present an ineffective assistance of trial counsel claim in state court. Martinez, 132 S. Ct. at 1320. When, as in Missouri,

> a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim . . . where appointed counsel in the initial-review collateral proceeding . . . was ineffective under the standards of Strickland v. Washington, 466 U.S. 668 (1984).

Id. at 1318. Martinez also requires the petitioner to show "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id.

21

The Court does not believe that petitioner can establish that post-conviction counsel's performance was deficient. Petitioner was appointed post-conviction counsel after he timely filed a *pro se* motion to vacate, set aside, or correct his judgment or sentence pursuant to Rule 29.15. Resp.'s Ex. 3 at 2. Appointed counsel filed an amended motion and request for an evidentiary hearing based on four claims of ineffective assistance of trial counsel. Counsel's request for a hearing was granted and counsel presented the testimony of three witnesses, in addition to petitioner's deposition, at the hearing.

If, as with appellate counsel, "one of [post-conviction] counsel's important duties is to focus on those arguments that are most likely to succeed, [then] counsel will not be held to be ineffective for failure to raise every conceivable issue." Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006). "When [] counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." Id. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000)). Petitioner has not argued that his claims in Grounds 5 and 6 are stronger than the claims his post-conviction counsel competently raised. Nonetheless, the Court will examine petitioner's ineffective-assistance claims to determine whether they are "substantial."

**Ground Five**: In Ground Five, petitioner asserts that his trial counsel was ineffective for failing to call Theres Shannon as a witness at trial. To prove that counsel was ineffective under Strickland, a petitioner must show that his counsel's

performance was both deficient and prejudicial. 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential," requiring the court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." Id. at 697. To establish prejudice under Strickland, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "The likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792. Thus, even if his counsel's failure to call a witness to testify at trial falls below an objective standard of reasonableness, petitioner still must show that there is a substantial and reasonable probability that the outcome of the trial would have been different had the witness been allowed to testify.

The record demonstrates that petitioner's trial counsel was aware of the statement Ms. Shannon made to investigators concerning alleged statements Bobby Mays made regarding his involvement in Mr. Toler's death. Resp.'s Ex. 1 at 216. Ms. Shannon told police Mays told her he choked Mr. Toler, but someone else killed him. Resp.'s Ex. 6 at 163. The trial court found this statement to be inadmissible at trial. Resp.'s Ex. 1 at 1223–25. Thus, defense counsel opted to not call Ms. Shannon as a witness at trial. The appellate court also found this statement to be inadmissible under Chambers on direct review. Resp.'s Ex. 2 at 6–7. Counsel's strategic decision to not call Ms. Shannon to testify as a witness falls within the wide range of reasonable professional assistance. Even if trial counsel's decision

was not reasonable, petitioner has not shown that the outcome of trial would have been different if Ms. Shannon had testified. Ms. Shannon's statements did not exonerate petitioner. Thus, petitioner's ineffective assistance claim regarding Ms. Shannon does not have merit, and he is not entitled to relief on Ground Five.

**Ground Six**: In Ground Six, petitioner asserts that his trial counsel was ineffective for failing to investigate and call Cedric Hemphill, Terry Polk, Shannon Jones Stephany, Latosha Rice, Linda Stokes, Brenda Sutton, Andrea Williams, Keith Stokes, Lafferance Sutton, Tony Cooper, Jacob Collins and Daris Cobb as witnesses at trial. Trial counsel is not ineffective for failing to call a witness whose testimony would have been inadmissible at trial. Skillicorn v. Luebbers, 475 F.3d 965, 973–74 (8th Cir. 2007). Hearsay statements may nonetheless be admissible in a criminal trial if they are "originally made and subsequently offered at trial under circumstances that provide considerable assurance of their reliability." Chambers, 410 U.S. at 300–01.

The trial court and appellate court on direct review found that Mays's statements to Antonio (Tony) Cooper, Jacob Collins and Latosha Rice were not admissible under the indicia of reliability set forth in Chambers. Resp.'s Ex. 1 at 1223–25; Resp.'s Ex. 2 at 6. Defense counsel was aware of alleged statements Mays made to these witnesses and, as with Ms. Shannon, made strategic decisions to not call these persons as witnesses. Resp.'s Ex. 1 at 216. Petitioner's trial counsel also was aware of and investigated the statements Mays allegedly made to Cedric Hemphill, Terry Polk, Shannon Jones Stephany, Linda Stokes, and Brenda Sutton. Resp.'s Ex. 1 at 1222–25. The trial court likewise found these statements to be inadmissible hearsay. Petitioner has not shown that similar statements Mays

24

made to Andrea Williams, Keith Stokes, Lafferance Sutton, or Doris Cobb would otherwise be admissible.

Even if trial counsel's decision to not call these witnesses to testify was not reasonable, petitioner has failed to show a substantial likelihood that allowing their testimony would have resulted in a different outcome at trial. Each of Mays's statements to any of the proposed witnesses regarding his alleged involved in Mr. Toler's murder was abstract or non-specific. Resp.'s Ex. 6 at 149–64; Resp.'s Ex. 2 at 6–7. None of Mays's statements exculpated petitioner. Id. The jury instructions submitted included Missouri Approved Instructions (MAI) 314.02 as modified by 304.04 for murder in the first-degree with accomplice liability. Resp.'s Ex. 6 at 107; Resp.'s Ex. 1 at 1229. The jury ultimately found petitioner guilty of the lesser-included offense of involuntary manslaughter in the first-degree. Resp.'s Ex. 6 at 129. Because Mays's statements consistently involved him acting in concert with another, petitioner has not shown a substantial likelihood that the jury would not have found petitioner guilty even if Mays's statements had been admitted. Accordingly, petitioner's underlying ineffective assistance of counsel claim regarding counsel's decision to not call the twelve proposed witnesses to testify at trial is without merit. Petitioner is not entitled to relief on Ground Six.

### F. Grounds Seven through Seventeen: Ineffective Assistance of Appellate Counsel

Petitioner's remaining claims allege that appellate counsel was ineffective for failing to raise on appeal the following claims: (7) the trial court erred in overruling petitioner's motion for judgment of acquittal at the close of evidence because the evidence was insufficient to support a conviction for involuntary manslaughter or (8) the burglary conviction; (9) the trial court erred in denying petitioner's motion

to suppress evidence obtained from the unlawful search of 448 Pinnell on August 19, 2006; (10) the trial court erred in overruling petitioner's objection to the state's closing argument that defense counsel had engaged in a "confusing illusion" as an improper comment of defense counsel's character; (11) and (12) the trial court erred when it denied petitioner's written objection to MAI 300.02 and 302.04 because the instructions used the term "firmly convinced" rather than "beyond a reasonable doubt"; (13) the trial court erred in denying defense counsel's motion to go first or, in the alternative, alternate with the state during voir dire; (14) and (15) the trial court erred in sustaining the state's requests to strike jurors A.F.H. and D.M.E. for cause over petitioner's objections because those jurors did not express an unequivocal inability to follow the court's instructions; (16) the trial court erred when it sustained the state's request to strike juror P.E.S. for cause because the hardship she indicated was insufficient to excuse her from the jury; and (17) the trial court erred when it overruled petitioner's objection during the state's opening statement that petitioner and his accomplices tied up Mr. Toler because it was conclusory and argumentative.

Petitioner did not raise these claims in his initial post-conviction motion. Rule 29.15 of the Missouri Supreme Court Rules provides for claims of ineffective assistance of appellate counsel and states that the failure to raise any claim that can be raised under this rule results in a complete waiver of the claim. <u>See also</u> <u>Abdi v. Hatch</u>, 450 F.3d 334, 338 (8th Cir. 2006) ("To preserve a claim for relief, a habeas petitioner must have raised both the factual and legal bases of his claim to the state court, and afforded that court a fair opportunity to review its merits."

(internal citations and quotations omitted)).   As such, petitioner has defaulted on these claims.

When a habeas petitioner has defaulted on his federal claims in state court, "federal habeas review of his claims is barred unless he 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'"   Morgan v. Javois, 744 F.3d 535, 538 (8th Cir. 2013) (quoting Coleman v. Thompson, 501 U.S. 722, 750–51 (1991)).   To establish "cause" for the default, a petitioner generally must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."   Murray v. Carrier, 477 U.S. 478, 488 (1986).   To establish actual prejudice, the petitioner "must show that the errors of which he complains 'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"   Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)) (emphasis omitted). To fall within the fundamental-miscarriage-of-justice exception, "a habeas petitioner [must] present new evidence that affirmatively demonstrates that he is innocent of the crime for which he was convicted."   Murphy v. King, 652 F.3d 845, 850 (8th Cir. 2011) (citation omitted).

Petitioner has not shown any external impediment to establish "cause" for his default in the state proceedings.   See Dansby v. Hobbs, 766 F.3d 809, 833 (8th Cir. 2014) (declining to extend Martinez to claims alleging ineffective assistance of counsel on direct appeal); see also Martinez, 132 S. Ct. at 1320 ("The rule of Coleman"—that ineffective assistance of counsel during state post-conviction

proceedings cannot serve as cause to excuse procedural default—"governs in all but the limited circumstances recognized here."); <u>accord</u> <u>Long v. Butler</u>, 809 F.3d 299, 314–15 (7th Cir. 2015); <u>Reed v. Stephens</u>, 739 F.3d 753, 778 n.16 (5th Cir. 2014); <u>Hodges v. Colson</u>, 727 F.3d 517, 531 (6th Cir. 2013); <u>Banks v. Workman</u>, 692 F.3d 1133, 1148 (10th Cir. 2012).  <u>But see</u> <u>Ha Van Nguyen v. Curry</u>, 736 F.3d 1287, 1293–94 (9th Cir. 2013).

Even if petitioner were able to establish cause, he fails to show prejudice as a result of the alleged ineffective assistance of appellate counsel.  Petitioner's counsel filed a direct appeal from his conviction competently raising three points.  Resp.'s Ex. 4 at 21–26; <u>see</u> <u>Link</u>, 469 F.3d at 1205 ("When appellate counsel competently asserts some claims on a defendant's behalf, it is difficult to sustain an ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims.").  Appellate counsel's strategic decision to not raise other claims was objectively reasonable.  <u>See</u> <u>Jones v. Barnes</u>, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.").  Petitioner provides no evidence that his claims in Grounds Seven through Seventeen are stronger than the claims appellate counsel raised.  <u>See</u> <u>Smith</u>, 528 U.S. at 288 ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." (quoting <u>Gray v. Greer</u>, 800 F.2d 644, 646 (7th Cir. 1986))); <u>see also</u> <u>Adams v. Armontrout</u>, 897 F.2d 332, 333–34 (8th Cir. 1990) (stating that broad references to the record do not fulfill the requirement that a petitioner plead "specific, particularized facts which entitle him or her to

habeas corpus relief for each ground specified" pursuant to Rule 2(c) of the Federal Rules Governing Section 2254 Cases in the United States District Courts). As such, petitioner has not shown that his appellate counsel's performance was objectively unreasonable to demonstrate actual prejudice and excuse his default of these claims. Petitioner has not otherwise demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. Accordingly, petitioner is not entitled to relief on Grounds Seven through Seventeen.

## V.     Conclusion

For the reasons discussed above, the Court concludes that petitioner has failed to establish that he is entitled to relief based on state court proceedings that were contrary to, or an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Petitioner has also failed to make a substantial showing of the denial of a constitutional right. Therefore, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

A judgment in accordance with this Memorandum will be entered separately.


_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE


Dated this 9th day of September, 2016.

29